## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NESRIN SHRSHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1167 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Nesrin Shrsher, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Brief); Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging an onset date of May 20, 2012.  (Tr. 182-85.)  Upon denial of that application initially (Tr. 64, 82-86) and on reconsideration (Tr. 65-81, 89-92), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 95-97).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 31-63.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 10-25.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 8-9, 282-84), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.    [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2016.

2.    [Plaintiff] has not engaged in substantial gainful activity since May 20, 2012, the alleged onset date.

. . .

3.    [Plaintiff] has the following severe impairments: seizure disorder, major depressive disorder, anxiety disorder, migraine headaches, degenerative disc disease, and obesity.

. . .

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

2

. . .

5.  . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except [she] cannot be exposed to workplace hazards. [Plaintiff] can understand, remember, and carry out simple, routine, repetitive tasks, consistent with reasoning level one or two in the [D]ictionary of [O]ccupational [T]itles ("DOT"), meaning that she can apply common sense understanding to carry out simple, one-to-two step instructions and deal with standardized situations with occasional or no variables in or from the situations encountered on the job. [Plaintiff] can have no interaction with the general public but she can have occasional interaction with coworkers and supervisors. She can respond to routine changes in a non-production work environment.

. . .

6.  [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from May 20, 2012, through the date of this decision.

(Tr. 15-24 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope

of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as

adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . .

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id.

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[3] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')."  Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "[t]he ALJ's RFC finding did not sufficiently reflect the severity and intensity of [Plaintiff's] migraine headaches" (Docket Entry 11 at 5 (italics omitted)); and

(2) "[t]he ALJ erred by posing a hypothetical question that failed to account for [Plaintiff's] moderate limitation in concentration, persistence, and pace [('CPP')]" (<u>id.</u> at 12 (italics omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (<u>See</u> Docket Entry 13 at 5-12.)

## 1. Migraine Headaches

In Plaintiff's first assignment of error, she contends that "[t]he ALJ's RFC finding did not sufficiently reflect the severity and intensity of [Plaintiff's] migraine headaches." (Docket Entry 11 at 5 (italics omitted); <u>see also</u> <u>id.</u> at 7 ("[T]he ALJ's RFC

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

finding does not allow a reviewing court to be reasonably assured that the RFC adequately captures the effect of [Plaintiff's] migraines on her ability to work.").)    In presenting this challenge, Plaintiff mischaracterizes the nature of the Court's review.    For example, Plaintiff attempts to frame the "only question" as a determination of the "frequency and intensity" of her migraine headaches, and then declares that "[t]he record is in [Plaintiff's] favor."    (Id.; see also id. at 6 ("There is sufficient evidence to allow [Plaintiff] to prevail on her claim.").)    As explained in Subsection II.A., the Court does not make a de novo determination of whether the record "favors" Plaintiff or Defendant on any pertinent factual issue resolved by the ALJ (or whether "sufficient evidence" would have allowed the ALJ to find for Plaintiff on that issue); rather, the Court must review the record to assess whether substantial evidence supports challenged factual findings made by the ALJ and/or whether the ALJ applied correct legal standards in connection with the disputed matters.

Notwithstanding Plaintiff's mischaracterization of the judicial review process, the Court may discern some cognizable arguments regarding the ALJ's findings and conclusions about Plaintiff's headaches.    First, Plaintiff faults the ALJ for stating that, despite a "'referr[al] to a headache clinic in September 2012 for further evaluation of [Plaintiff's] headaches,'" the record

lacked any "'indication that [Plaintiff] ever sought specific medical treatment for her headaches.'" (Id. at 8 (quoting Tr. 20).) According to Plaintiff, she reported suffering from migraine headaches to her medical providers on two occasions after September 2012 (id. at 8-9 (citing Tr. 447, 500)), and she testified before the ALJ that she continued to experience headaches three to four times per week, that some of her headaches lasted all day, and that she stayed in a dark room and applied Vicks VapoRub to her head to ease the pain (id. at 9 (citing Tr. 47-48, 361)).

Further, Plaintiff maintains that "the negative inference that the ALJ would like to draw from the alleged lack of specific medical treatment after September 2012 . . . is impermissible [under Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ('SSR 96-7p'), which] prohibits an ALJ from 'draw[ing] any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.'" (Docket Entry 11 at 9 (quoting SSR 96-7p, 1996 WL 374186, at *7).) Finally, Plaintiff maintains that the ALJ's "conclusion that the RFC covers [Plaintiff's] migraines

10

is unreviewable" (id. at 11), because the ALJ did not make an express finding as to the intensity and frequency of Plaintiff's migraines (id. at 10, 11). Plaintiff's contentions miss the mark.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). Moreover, an ALJ need only "adopt credibly established limitations when formulating the RFC." Fuerst v. Colvin, No. 1:15CV1054, 2016 WL 5957602, at *9 n.13 (M.D.N.C. Oct. 13, 2016) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Nov. 15, 2016) (Eagles, J.); Bryant v. Colvin, No. 3:13-CV-349-JAG, 2014 WL 896983, at *12 (E.D. Va. Mar. 6, 2014) (unpublished) (District Judge adopting recommendation of Magistrate

Judge) (noting ALJ must "only . . . include those limitations that the ALJ considers credibly established"). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ here sufficiently evaluated Plaintiff's migraine headaches and explained the basis for the RFC determination. (See Tr. 17-23). As an initial matter, the ALJ did not err by stating that, "[w]hile [Plaintiff] was referred to a headache clinic in September 2012 for further evaluation of her headaches, there is no indication that [Plaintiff] ever sought specific medical treatment for her headaches." (Tr. 20 (emphasis added).) The ALJ's mention of the headache clinic referral in the introductory clause, as well as her use of the word "specific," make clear that she did not find that Plaintiff experienced a total lack of headaches after September 2012; rather, the ALJ found no record evidence that Plaintiff either received treatment at the headache clinic or sought other specific treatment for her headaches after September 2012. (Id.) Moreover, each of the two occasions Plaintiff cites after September 2012 when she reported experiencing headaches to her medical providers (see Docket Entry 11 at 8-9 (citing Tr. 447, 500)) involved follow-up appointments for Plaintiff's seizure disorder, and do not reflect any specific treatment of Plaintiff's headaches (see Tr. 446-49 (11/14/13 follow-up neurology visit documenting Plaintiff's report of occasional and improving

12

headaches but no treatment of same), 500 (9/4/14 follow-up neurology visit recording Plaintiff's complaint of two-week history of headaches intermittently relieved by over-the-counter medicine but no treatment of same)).[6]

Plaintiff nonetheless maintains that "the negative inference that the ALJ would like to draw from [Plaintiff's] alleged lack of specific medical treatment [for headaches] after September 2012 . . . is impermissible" under SSR 96-7p, because the ALJ failed to expressly consider any information that might have explained Plaintiff's failure to seek medical treatment. (Docket Entry 11 at 9.)[7] A substantial question exists as to whether the ALJ made a negative credibility determination on this front, such that SSR 96-7p would apply. On one hand, the ALJ's remark about Plaintiff's failure to seek specific medical treatment for headaches occurred in a separate paragraph from the one in which the ALJ expressly "considered [Plaintiff's] subjective complaints," which suggests that the ALJ did not draw an adverse <u>credibility</u> inference from Plaintiff's failure to seek headache-specific treatment after

_____

[6] The ALJ expressly discussed Plaintiff's report of headaches on both of those occasions (<u>see</u> Tr. 19-20), as well as another mention of headaches by Plaintiff at a December 2012 neurology follow-up appointment for her seizure disorder (<u>see</u> Tr. 19; <u>see also</u> Tr. 385-87). Additionally, the ALJ explicitly considered Plaintiff's testimony regarding her headaches. (<u>See</u> Tr. 18.) Those considerations further underscore the fact that the ALJ did not deem Plaintiff headache-free after September 2012.

[7] Plaintiff did not offer any explanation for her lack of specific medical treatment for headaches after September 2012 either at the hearing or in support of her instant motion for judgment. (<u>See</u> Tr. 31-63; <u>see also</u> Docket Entry 11.)

September 2012.  (Compare Tr. 20, with Tr. 22.)  On the other hand,

the ALJ discussed Plaintiff's lack of post-September 2012 headache

treatment in the same paragraph in which the ALJ also emphasized

record evidence tending to show that Plaintiff's seizure disorder

and headaches had not caused Plaintiff to suffer significant

symptoms since May 2012, which could indicate the ALJ did draw a

negative inference about the severity and frequency of Plaintiff's

headaches, at least in part, from Plaintiff's failure to seek

specific headache treatment after September 2012.  (See Tr. 20.)

Ultimately, the Court need not determine whether the ALJ's

statement in question actually violated SSR 96-7p.[8]  Assuming that

the ALJ erred, any such error remains harmless because the ALJ

otherwise properly evaluated Plaintiff's subjective complaints.

See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)

---

[8] Effective March 28, 2016, see Social Security Ruling 16-3p, Policy
Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability
Claims, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date of original
Ruling), the Social Security Administration superceded SSR 96-7p with Social
Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation
of Symptoms in Disability Claims, 2016 WL 1119029, at *1 (Mar. 16, 2016).  The
new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-
regulatory policy, as [the] regulations do not use this term."  Id.  The ruling
"clarif[ies] that subjective symptom evaluation is not an examination of the
individual's character," id., and "offer[s] additional guidance to [ALJs] on
regulatory implementation problems that have been identified since [the
publishing of] SSR 96-7p," id. at *1 n.1.  Plaintiff here does not argue that SSR
16-3p, rather than SSR 96-7p, applies to the ALJ's evaluation of her subjective
complaints.  (See Docket Entry 11 at 5-11.)  Moreover, the ALJ's decision in this
case predates the effective date of SSR 16-3p, and, because SSR 16-3p changes
existing Social Security Administration policy regarding subjective symptom
evaluation, that Ruling does not apply retroactively, see Bagliere v. Colvin, No.
1:16CV109, 2017 WL 318834, at *4-8 (M.D.N.C. Jan. 23, 2017) (Auld, M.J.)
(recommendation); see also Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at
*5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished) (Auld, M.J.), recommendation
adopted, slip op. (M.D.N.C. May 10, 2016) (Biggs, J.).  Accordingly, this
Recommendation will apply SSR 96-7p to Plaintiff's argument regarding the ALJ's
subjective symptom evaluation.

(observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). The ALJ found that "[t]reatment notes fail[ed] to indicate the level of dysfunction [Plaintiff] [wa]s alleging" (Tr. 19), and provided a review of the objective medical evidence regarding each of the impairments the ALJ found severe at step two of the SEP (see Tr. 19-22). The ALJ also evaluated Plaintiff's activities of daily living, and noted that Plaintiff "testified that she is able to clean her house, . . . prepare[] simple meals[,] . . . [as well as] take[] care of the plants and flowers outside[,] . . . [and that she] reported no problems with performing personal care duties." (Tr. 16.) Moreover, the ALJ made the follow observations regarding Plaintiff's subjective complaints:

> At the hearing, [Plaintiff] testified she does not drive due to her medical impairments. However, her neurologist completed the [Department of Motor Vehicles ("DMV")] paperwork in December 2012, stating that [Plaintiff] was able to drive, but then noted during an appointment in March 2014 that although he sent the proper paperwork to the DMV so [Plaintiff] could regain her driving privileges, [Plaintiff] had not signed a release form to get her driver's license back. [Plaintiff] also testified that her medical issues did not cause her to stop working, but rather, her medical issues started after she had already quit work.

(Tr. 22 (internal citation omitted).)

Where the ALJ has erred in one component of the credibility evaluation, but, as here, has otherwise supported the credibility

15

analysis with substantial evidence, no need exists to remand. <u>See</u> <u>Johnson v. Commissioner of Soc. Sec.</u>, 535 F. App'x 498, 507 (6th Cir. 2013) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it."); <u>Carmickle v. Commissioner, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1162 (9th Cir. 2008) (concluding that ALJ improperly discounted the claimant's credibility for inability to afford treatment but holding that, "so long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal" (quoting <u>Batson v. Commissioner of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195-97 (9th Cir. 2004))); <u>Stinnett v. Colvin</u>, No. CV-13-3115-FVS, 2014 WL 6879074, at *6 (E.D. Wash. Dec. 4, 2014) (unpublished) (deeming ALJ's failure to develop record regarding the claimant's ability to afford treatment "harmless because . . . the ALJ's remaining reasoning and ultimate credibility finding is adequately supported by substantial evidence"); <u>Baker ex rel. C.S.A. v. Astrue</u>, No. 1:11-CV-00592-WTL, 2012 WL 3779213, at *6 (S.D. Ind. Aug. 31, 2012) (unpublished) (finding that "the ALJ did not consider alternative explanations for why [the claimant] did not take medication" which "ran afoul of SSR 96-7p," but that "the error was harmless"

because, "[g]iven the analysis the ALJ engaged in with respect to the SSR 96-7p factors, . . . proper consideration of alternative explanations with respect to this single factor would not have changed the outcome"); Wells v. Astrue, No. CIVIL 09-78-GFVT, 2009 WL 3789006, at *4 n.2 (E.D. Ky. Nov. 12, 2009) (unpublished) (ruling that "the ALJ['s] failure to address [the claimant's] alleged inability to afford treatment amounted to harmless error because [the ALJ] based his credibility determination on many factors, not merely on [the claimant's] lack of medical treatment").

Plaintiff also maintains that the ALJ's "conclusion that the RFC covers [Plaintiff's] migraines is unreviewable" (Docket Entry 11 at 11), because the ALJ did not make an express finding as to the intensity and frequency of Plaintiff's migraines (id. at 10, 11). This contention lacks merit, because (as concerns Plaintiff's migraine headaches) the ALJ "buil[t] an accurate and logical bridge from the evidence to h[er] conclusion[s]," Clifford, 227 F.3d at 872, which permits the Court to meaningfully review those conclusions. The ALJ expressly found Plaintiff's migraine headaches a severe impairment at step two of the SEP (see Tr. 15), but deemed those headaches insufficiently severe to meet a listing (see Tr. 16). The ALJ next discussed Plaintiff's testimony (see Tr. 18) and the objective medical evidence regarding Plaintiff's migraine headaches (see Tr. 19-20), and concluded that Plaintiff's

subjective complaints "concerning the <u>intensity</u>, persistence, and limiting effects of [her] symptoms [we]re not entirely credible" (<u>see</u> Tr. 19 (emphasis added)).  The ALJ subsequently accorded "great weight" to the state agency medical consultant who had precluded Plaintiff from concentrated exposure to hazards (Tr. 23, 76), but further limited her to <u>no</u> such exposure "given her history of migraine headaches" (Tr. 23).  The ALJ then adopted the VE's testimony as to three jobs available in significant numbers in the national economy that accommodated the RFC's restrictions.  (<u>See</u> Tr. 24, 53.)  Notably, Plaintiff does not offer any further restrictions the RFC should have contained to account for her migraines.  (<u>See</u> Docket Entry 11 at 10-11.)

In short, Plaintiff's first assignment of error does not establish an entitlement to relief.

## 2. CPP

In Plaintiff's second and final issue on review, she maintains that the ALJ failed to account for Plaintiff's moderate deficits in CPP in the hypothetical question to the VE.  (<u>See</u> Docket Entry 11 at 12-16.)  In particular, Plaintiff argues that the United States Court of Appeals for the Fourth Circuit in <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015), made "crystal clear" that "a restriction to simple, routine, repetitive tasks [('SRRTS')] does not account for a claimant's moderate limitations in CPP." (<u>Id.</u> at 12 (citing <u>Mascio</u>, 780 F.3d at 638).)  According to Plaintiff, "[w]hether, in

this case, the limitation in the hypothetical to non-production work sufficiently accounted for [Plaintiff's] moderate limitation in CPP" constitutes "the crux of the matter," and she notes the existence of "a split within the district as to th[at] issue." (Id. at 12-13.) In that regard, Plaintiff urges the Court to adopt the reasoning of Cummings v. Colvin, No. 1:14CV465, 2016 WL 792433 (M.D.N.C. Feb. 26, 2016) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Mar. 28, 2016) (Osteen, Jr., C.J.), which she construes as having found a non-production limitation insufficient to account for moderate deficit in CPP. (See Docket Entry 11 at 15-16 (discussing Cummings and citing other cases).) Plaintiff also contends that the Court should not follow Farrington ex rel. Farrington v. Berryhill, No. 1:15CV846, 2017 WL 807180 (M.D.N.C. Mar. 1, 2017) (unpublished) (Webster, M.J.), recommendation adopted, 2017 WL 1155051 (M.D.N.C. Mar. 27, 2017) (Biggs, J.), and Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606 (M.D.N.C. July 26, 2016) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, Jr., C.J.), because those cases incorrectly "dr[e]w a bright-line, talismanic rule . . . that a limitation to non-production work solves the Mascio problem." Plaintiff's arguments fall short.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's

limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation adopted by District Judge) (unpublished) (emphasis added).

Here, beyond merely including "a non-production work environment" restriction in the RFC and hypothetical question (Tr. 17, 53), the ALJ's decision sufficiently explains why the restrictions in the RFC to "[SRRTs] consistent with reasoning level one or two in the [DOT], . . . with no interaction with the general public[,] . . . occasional interaction with coworkers and supervisors[,] . . . [and] routine changes in a non-production work environment" (Tr. 17) adequately accounted for Plaintiff's moderate limitation in CPP.

First, the ALJ noted at step two of the SEP that, although Plaintiff had moderate limitation in CPP, the record lacked any "indication [Plaintiff] has such difficulties that she would be unable to do very simple, unskilled work." (Tr. 17.) Second, the

ALJ discussed Plaintiff's testimony regarding her mental symptoms (see Tr. 18), but concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible" (Tr. 19).  As discussed above, the ALJ supported her analysis of Plaintiff's subjective complaints with substantial evidence.  Third, the ALJ also discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally.  (See Tr. 22-23.)  Most notably, the ALJ gave "great weight" to the state agency psychological consultant's opinion that, despite moderate deficit in CPP (see Tr. 72), Plaintiff remained "able to perform SRRTs in assignments that do not require significant social interaction" (Tr. 78).[9]

Those three elements of the ALJ's decision adequately supported the conclusion that, despite moderate limitation in CPP, Plaintiff remained capable of performing SRRTs with limited social interaction in a non-production work environment.  See Sizemore v. Berryhill, __ F. App'x __, __, 2017 WL 467712, at *6 (4th Cir. Oct.

---

[9] Consultative psychological examiner Dr. Anthony J. Smith evaluated Plaintiff on March 13, 2013, diagnosed "[m]ajor depressive disorder, recurrent, moderate," and "[a]nxiety disorder, [no other specification]," and concluded that:

> A physical examination would better verify the extent of the epilepsy and any other physical complaints.  If verified these conditions could limit [Plaintiff's] ability to perform [SRRTs] and maintain [CPP].  She would likely be able to interact with peers and co-workers and respond appropriately to supervision.

(Tr. 431-32 (emphasis added).)  Thus, Dr. Smith implicitly found that Plaintiff's mental impairments impacted neither her ability to perform SRRTs nor to maintain CPP.  The ALJ gave "some weight" to Dr. Smith's opinions, but "further limited [Plaintiff's] social interactions due to her subjective complaints." (Tr. 22.)

17, 2017) (rejecting the plaintiff's argument under <u>Mascio</u> where ALJ relied on opinions of consultative examiner and state agency psychologist that, notwithstanding moderate deficit in CPP, the plaintiff could sustain attention sufficiently to perform SRRTs).[10]

Moreover, the ALJ's inclusion of "a non-production work environment" (Tr. 17) in the RFC "reasonably related to a moderate limitation in Plaintiff's ability to stay on task," <u>Grant</u>, 2016 WL 4007606, at *6. In that regard:

> [T]he weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in <u>Mascio</u> supports the view that the non-production restriction adopted in this case sufficiently accounts for [the p]laintiff's moderate limitation in CPP. Moreover, that approach makes sense. In <u>Mascio</u>, the Fourth Circuit held only that, when an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) or explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task." Where, as here, the ALJ has included a specific restriction that facially addresses "moderate" (not "marked" or "extreme," <u>see</u> 20 C.F.R. § 416.920a(c)(4)) limitation in the claimant's ability to stay on task, i.e., a restriction to "non-production oriented" work, <u>Mascio</u> does not require further explanation by the ALJ, <u>at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits</u>.

_____

[10] This consideration materially distinguishes this case from <u>Cummings</u>, where the Court (1) observed that the record did "not appear to provide the 'logical bridge' necessary for th[e] Court to find that the RFC adequately t[ook] into account [the p]laintiff's moderate difficulties in [CPP]," <u>Cummings</u>, 2016 WL 792433, at *4, and (2) ultimately relied on the absence of any "explanation as to why [the p]laintiff's moderate limitations in <u>social functioning</u> failed to translate into any work-related limitations in her RFC" (<u>id.</u> at *5 (emphasis in original)).

Id. at *9 (emphasis added); see also id. at *7-9 (discussing authority addressing "non-production" restrictions); Farrington, 2017 WL 807180, at *4 (following Grant and holding that preclusion of "production, quota, and fast-paced jobs . . . adequately accounted for [the plaintiff's] ability to 'stay on task'").

Plaintiff criticizes Farrington and Grant on three grounds. As mentioned above, Plaintiff first faults those cases for "draw[ing] a bright-line, talismanic rule . . . that a limitation to non-production work solves the *Mascio* problem," and argues that "[w]hether an ALJ's decision survives a *Mascio* challenge depends at least partly on the facts of the case." (Docket Entry 11 at 13.) Plaintiff urges that Cummings constitutes "the better solution to the *Mascio* problem" (id. at 15), because Cummings "properly recognized that whether a limitation to non-production work 'covers' a moderate limitation in CPP depends on (among other things) whether there was sufficient evidence that the claimant's limitation in CPP is *linked* to the non-production limitation" (id. at 16 (citing Cummings, 2016 WL 792433, at *4)). In that regard, Plaintiff argues:

> One critical factual issue is the *cause* of the claimant's moderate limitation [in CPP], for if the limitation . . . is not caused by the demands of production work, than a limitation to *non*-production work could not be the antidote. Watching a security system television screen, for example, is non-production work, but one can easily imagine what risks to security there would be if the job-

holder were unable to stay on task.  So there can be no
bright-line rule . . . .

(Id. at 13-14.)

Plaintiff's argument glosses over the language in Grant,
emphasized above, that "[w]here . . . the ALJ has included a
specific restriction that facially addresses 'moderate' . . .
limitation in the claimant's ability to stay on task, i.e., a
restriction to 'non-production oriented' work, Mascio does not
require further explanation by the ALJ, at least absent some
evidentiary showing by the claimant . . . that he or she cannot
perform even non-production-type work because of his or her
particular CPP deficits." Grant, 2016 WL 4007606, at *9 (emphasis
added).  The underscored language makes abundantly clear that Grant
did not proclaim a "bright-line, talismanic rule" that limitations
to non-production work always "solve[] the Mascio problem," and
recognized, just as Cummings did, see Cummings, 2016 WL 792433, at
*4, that a non-production limitation would not adequately address
moderate limitation in CPP if the claimant offered evidence "that
he or she cannot perform even non-production-type work because of
his or her particular CPP deficits," Grant, 2016 WL 4007606, at *9.
Notably, Plaintiff has made no attempt here to show that she
remains unable to perform the jobs cited by the VE and adopted by
the ALJ because of her limitations in CPP.  (See Docket Entry 11.)

Plaintiff next contends that "the word 'moderate' allows too much variance for a moderate limitation in CPP to be covered by a bright-line rule such as that adopted in *Farrington* and *Grant*." (Id. at 14.) In particular, Plaintiff deems her limitations in CPP "worse than the ALJ indicated," and argues that "[a] bright-line rule would not account for a moderate limitation in CPP that is [as] severe [as Plaintiff's] (though shy of 'marked')." (Id.) That contention fails because, as discussed above, Farrington and Grant did not announce "bright-line" rules regarding non-production limitations. Moreover, the ALJ's decision permits the Court to meaningfully review the manner in which the ALJ accounted for Plaintiff's moderate limitation in CPP in the RFC and dispositive hypothetical question.

Finally, Plaintiff maintains that "*Farrington* and *Grant* should not be followed . . . [because] [t]hose cases interpreted *Mascio* as relying on the law of other circuits in order to hold that non-production work accounts for moderate limitation in CPP." (Id. at 14-15.) According to Plaintiff, "to say *Farrington* and *Grant* relied on dicta would be an understatement: Neither *Mascio* nor *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir.2011) – the only outside-the-circuit case that *Mascio* cited by name – involved the question whether non-production work could account for a moderate limitation in [CPP]." (Id. at 15.)

Plaintiff conflates reliance on dicta (which appears in neither _Grant_ nor _Farrington_) and the evaluation of persuasive (albeit non-binding) authority (which appears in _Grant_ and _Farrington_). For example, in _Grant,_ the Court began its analysis by noting that, "in reaching its conclusion in _Mascio_ that a restriction to 'simple, routine tasks or unskilled work' did not adequately address moderate deficits in CPP, the Fourth Circuit expressly relied on the Eleventh Circuit's decision in _Winschel_." _Grant_, 2016 WL 4007606, at *7 (quoting _Mascio_, 780 F.3d at 638 ("[W]e agree with other circuits that an ALJ does not account "for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work." _Winschel v. Comm'r of Soc. Sec._, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits).")). The _Grant_ Court then observed that (consistent with the reference to other circuits (plural) in _Mascio_) _Winschel_ "relied upon decisions from the Third, Seventh, and Eighth Circuits." _Grant_, 2016 WL 4007606, at *7 (citing _Winschel_, 631 F.3d at 1180 (in turn citing _Stewart v. Astrue_, 561 F.3d 679, 684–85 (7th Cir. 2009), _Ramirez v. Barnhart_, 372 F.3d 546, 554 (3d Cir. 2004), and _Newton v. Chater_, 92 F.3d 688, 695 (8th Cir. 1996))).

Next, the _Grant_ Court provided "a review of how those appellate courts (and district courts within those circuits) have ruled in cases involving a moderate limitation in CPP and a

restriction to non-production work in the mental RFC." Id. at *8-9. As a result of that review of the holdings (not dicta) of those cases, the Court concluded that "the weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that the non-production restriction adopted in th[at] case sufficiently account[ed] for [the p]laintiff's moderate limitation in CPP." Id. at *9. That analysis remains sound.

In sum, Plaintiff's second issue on review fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.


                            /s/ L. Patrick Auld
                         **L. Patrick Auld**
                **United States Magistrate Judge**


October 31, 2017